UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION September 5, 2007

ALIVE, ET AL,

    Plaintiff,

vs                                                           Case No: 07-12116
                                                              Honorable Victoria A. Roberts

FARMINGTON PUBLIC SCHOOLS,
ET AL,

    Defendants.
_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND ENTERING PERMANENT INJUNCTION

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order (Doc. #15) and Motion for Preliminary Injunction (Doc. #16) filed on August 29, 2007. The Defendants responded and Plaintiffs replied. A hearing was held on August 31, 2007. All parties were represented.

In response, Defendants state that the parties have been in negotiation for weeks and reached a consent agreement on the merits. Defendants say the only remaining issue is attorney fees. Plaintiffs filed a Reply contesting this portrayal of the facts, and alleging that Defendants engaged in a pattern of delay throughout this litigation. It became clear at the hearing however, that attorney fees are the roadblock to a complete resolution of this case.

1

**A. Findings of Fact**

This matter arises out of the differential treatment of a Christian bible study group, ALIVE, in Farmington High School ("Defendant"). ALIVE, an unincorporated student group, was formed by A.G. ("Plaintiff") (together "Plaintiffs) and another student at the same school (who has since graduated) in 2006. ALIVE's mission is to "encourage positive spiritual discussion among students in the school about Christianity, for students to learn more about the basic, major beliefs taught in the bible, and for students to pray for the needs of students, the school, the community, and the nation." Plaintiffs' Motion for a Temporary Restraining Order at 14. Later in 2006, Plaintiff A.G. and his friend sought formal recognition as an official school student group. *See id.*

On or about August 28, 2006, Plaintiff A.G. made a written request for recognition of ALIVE by the school as an official student group. *See id.* at 16. Defendant Principal responded to the request by directing Plaintiff A.G. to submit a mission statement and by-laws for the proposed club to Defendant Assistant Principal. The request was denied. The parties next met to discuss the denial. At this meeting, Defendant staff said the denial was because of ALIVE's "religious viewpoint and content of its speech and meetings." *See id.* at 18. Plaintiff then informed Defendant Principal of the Federal Equal Access Act. Defendants offered to allow the group to meet, but without formal recognition by the school. In addition, Defendants refused to grant ALIVE either equivalent status or the privileges enjoyed by most other student groups. Plaintiffs say these refusals include:

1) Not being permitted to meet under the same terms and conditions as other student groups, including not being permitted to meet during the S.M.A.R.T. period (an activity

2

time during the school day);

2) Not being allowed to advertise the group over the public address system;

3) Not being able to advertise on the school's bulletin boards;

4) Not being listed as a school group on the school's website;

5) Not being listed in the school's yearbook;

6) Not being able to use the school's photocopying machines; and

7) Not being permitted to have ALIVE announcements broadcast over the school's internal television network.

*See* Pl. Mo. TRO at 6.

After informing Plaintiff A.G. of these details, Defendant Assistant Principal suggested that Plaintiff A.G. and his friend advertise their group's meeting by wearing T-shirts in school with the time and place of the meetings. The Defendant Assistant Principal suggested doing the same with backpacks. *See id.* at 6.

The parties had additional meetings in which they discussed the merits of their case but were not able to resolve their differences. Plaintiffs' counsel sent Defendant Principal, Superintendent, and Board a letter requesting equal treatment under the Equal Access Act. Defendants failed to respond and Plaintiffs filed suit. The suit requests a Temporary Restraining Order requiring Defendants to provide the "same access, treatment, benefits, and privileges other noncurriculum-related student groups and clubs enjoy...." The suit requests all those things Plaintiffs allege Defendants refused them.

Although it is not clear from the information submitted to this Court that *all* student groups have *always* been given equal access to *all* of the privileges Plaintiffs

seek, it is clear that Defendants granted at least one student organization at least one of these privileges during the time that ALIVE has been in existence, and that ALIVE has not been granted any of the privileges it seeks. *See* Pl. Mo. TRO at 17; Defendants' Answer to Complaint at 57.

Defendants continue to deny ALIVE these privileges. Plaintiffs assert that because the school year begins on September 4, 2007, they are entitled to a Temporary Restraining Order enjoining Defendant from continuing to exclude them from the privileges enjoyed by other student groups; or from treating ALIVE differently from the other student organizations because of its religious viewpoint.

## II. STANDARD OF REVIEW

This Court must determine whether Plaintiffs met their burden for issuance of a Temporary Restraining Order against Defendants. When deciding such motions, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See Summit County Democratic Cent. & Executive Co, v. Blackwell,* 388 F.3d 547, 550-51 (6th Cir. 2004); *see also Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert den.*, 526 U.S. 1087 (1999). No single factor is dispositive. The court must balance each factor to determine whether they weigh in favor of an injunction. *See id.* For the reasons stated below, this Court finds that the factors weigh in Plaintiffs' favor.

**III. CONCLUSIONS OF LAW**

**A) Likelihood of Success on Merits**

Plaintiffs allege violation of the Federal Equal Access Act ("EAA"), Michigan Equal Access Act ("MEAA"), First Amendment, and Fourteenth Amendment. *See* EAA, 20 U.S.C. §§ 4071-4074; MEAA, MCL § 380.1299; U.S. CONST, amend. I; U.S. CONSt, amend. XIV. In *Bd. of Educ. v. Mergens*, 496 U.S. 226, 247 (1990), the Supreme Court found the EAA constitutional and declined to address whether constitutional provisions were violated. The case was decided on the statutory grounds of the EAA. As the Court discusses below, it is clear that Plaintiffs are likely to succeed on the merits of their statutory claim. Accordingly, this Court need not address the merits of Plaintiffs' constitutional claims. *See Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ.*, 258 F. Supp. 2d 667, 691 (E. D. Ky. 2003). *Id.* at n.2 ("The Supreme Court has continually suggested that lower courts should avoid reaching constitutional questions where possible."). *See also United States v. National Treasury Employees Union*, 513 U.S. 454, 478 (1995) (noting a "policy of avoiding unnecessary adjudication of constitutional issues"); *Bowman v. Tennessee Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir. 1984) ("If we are able to decide this appeal on non-constitutional grounds we will do so and will not reach the First and Fifth Amendment issues.").

The EAA "guarantees public secondary school students the right to participate voluntarily in extracurricular groups dedicated to religious, political, or philosophical expressive activity protected by the First Amendment when other student groups are

given this right." *Prince v. Jacoby*, 303 F.3d 1074,1079 (9th Cir. 2002).

For the EAA to apply to a given school three conditions must be met: (1) the school must be a secondary school; (2) the school must receive federal funding; (3) the school must have established a "limited open forum" by allowing other noncurriculm-related groups to "meet" on school premises. *See id.* at 1079. Conditions (1) and (2) are straightforward and there is no disagreement that Defendant school meets them. *See* Pl. Mo. TRO at 25 n.4.

Only "limited open forum" requires further explanation. The EAA defines "limited open forum" as when a public secondary school "grants an offering or opportunity for one or more noncurriculm-related student groups to *meet* on school premises during *noninstructional time.*" 20 U.S.C. § 4071(b) (emphasis added). The statute further defines a "meeting" as "those *activities* of student groups which are permitted under a school's 'limited open forum' and are not directly related to the school curriculum." 20 U.S.C. § 4027(3) (emphasis added). Lastly, the EAA defines noninstructional time as "time set aside by the school before actual classroom instruction begins or after actual classroom instruction ends." § 4072(4).

Using these definitions, the Supreme Court held that if a public secondary school allows even "only one 'noncurriculum related student group' to meet, the Act's obligations are triggered." *See Mergens*, 496 U.S. at 236 (1990). Plaintiffs assert, and Defendants do not contest, that at least one "noncurriculum-related student group" has "met" at school and/or been granted the organizational privileges ALIVE now seeks. *See* Pl. Mo. TRO at 25 n.4. Once within the purview of the EAA, a school must not

"deny other clubs, *on the basis of the content of their speech*, equal access to meet on school premises during noninstructional time." See id. Mergens, 496 U.S. at 236 (emphasis added).

It appears clear that ALIVE has been treated differently than other student groups "on the basis of" the religious content of their speech. Accordingly, this Court is faced with only one arguable legal question before it. That question is what "equal access" to "meet" requires the school to provide to Plaintiffs under the EAA.

Pointedly, the text of the EAA requires only that schools falling under the purview of the EAA allow religious student groups "equal access" to "meet." The question is not a mere technicality because the Plaintiffs request more than just the ability to "meet;" they request other privileges that Defendants granted to at least one other organization. Indeed, the Plaintiffs request "the same access, treatment, benefits, and privileges other noncurriculum student groups and clubs enjoy at Farmington High School." Pl. Mo. TRO at 6.

Although in its seminal decision on the EAA the Supreme Court held that it was a violation for a school subject to the EAA to deny official status to a student group based on its religious viewpoint, it did not elaborately define the ultimate outward limit of the protections required by "equal access...to meet." See Mergens, 496 U.S. at 247. However, it is likely that the Supreme Court considers equal access to the "student activities program" as well as "access to the school newspaper, bulletin boards, the public address system, and the annual Club Fair" to be within the purview of the requirement of "equal access...to meet." The Court specifically noted that these privileges were bestowed by the grant of "official" status when it found that denial of

7

such status would violate the EAA. *Id.*

Subsequent to *Mergens*, the Ninth Circuit held that the plain language of the EAA lends itself to broad construction. *See Prince v. Jacobsy,* 303 F.3d 1074 (9th Cir. 2002). The court found that "[t]he disjunctive prohibition renders the denial of equal access *or* fair opportunity *or* discrimination unlawful." *Id.* at 1080 (emphasis in original). Similarly, the court found that "the term 'equal access' means what the Supreme Court [has said in other contexts]....religiously-oriented student activities must be allowed under *the same terms and conditions* as other extracurricular activities, once the secondary school has established a limited open forum." *Id.* at 1080 (emphasis added).

Relying on *Prince* and *Mergens*, a more recent district court in the Sixth Circuit held:

> Equal access 'to meet' is broadly defined under the EAA to include *all activities in which student groups are permitted to engage* in a particular school...once a court determines that a limited open forum has been created because school access has been provided to at least one noncurriculum-related group, the access afforded *must be equal to that provided to all groups*, both curricular and noncurricular.

*Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ.*, 258 F. Supp. 2d 667 (E. D. Ky. 2003) (emphasis added).

A district court in another Circuit reached a similarly broad interpretation. *See Colin ex rel. Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1147 (C. D. Cal. 2000) ("[The school]...must give Plaintiffs *all the same rights and privileges* that it gives to other student groups. Once recognized, student groups are permitted to meet on campus during noninstructional time, publicize the group at [activity fairs], post flyers, make announcements over the public address system, and have a group picture in the yearbook.") (emphasis added); *Id.* at 1149 ("Alliance must be permitted access to the

8

school campus *in the same way* that the District provides access to all clubs, including the Christian Club and the Red Cross/Key Club.") (emphasis added).

Common sense dictates a liberal interpretation of the scope of "access to... meet." Furthermore, the definition of "meeting" in the statute is undeniably broad. The definition does not simply contain a description of different kinds of traditional meetings, but is defined as all "those *activities* of student groups which are permitted under a school's limited open forum and are not directly related to the school curriculum." § 4072(3) (emphasis added).

Given these precedents, this Court finds that Plaintiffs are likely to succeed on the merits of each of the matters they seek to do at the high school, and their general request that they be provided the "same access, treatment, benefits, and privileges other noncurriculm-related student groups and clubs enjoy." Pl. Mo. TRO at 6.

This Court notes the textual similarity of the MEAA to the EAA, and finds that Plaintiffs are also likely to succeed on the merits of their state law claim. This finding weighs heavily in favor of issuance of the temporary restraining order.

**B) Irreparable Harm**

Plaintiffs argue they will be irreparably harmed as soon as school begins on September 4th if a temporary restraining order does not issue:

> Without injunctive relief, plaintiffs will continue to suffer irreparable injury to their constitutional and statutory rights throughout his school year. They will not receive equal access and they will be unable to fulfill their mission of encouraging positive spiritual discussion in the school about Christianity....

Pl. Mo. TRO at 31. In a plurality opinion, the Supreme Court held that "[l]oss of First Amendment freedoms, for even a minimal period of time unquestionably constitutes

9

irreparable injury." *Elrod v. Burns*, 427 US 347, 373.  The EAA also protects expressive liberties, and harm to these liberties must be weighed as well.  *See Hsu by & Through Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 872 (2d. Cir. 1996). Examination of case law applying this principle and specifically analyzing "irreparable harm" arising from violations of EAA is instructive.

When considering the question of a preliminary injunction where First Amendment rights are at stake, special consideration is required:

> When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.... [I]t is well-settled that First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury....Thus, to the extent that Connection can establish a substantial likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights. Likewise, the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

In a case cited by Plaintiffs, the court held "the denial for one year (now two years) of the right to pray in an after-school Bible group...also constitutes 'irreparable injury....'[The Plaintiffs] are entitled to the issuance of a preliminary injunction so that the injury will cease." *See Hsu,* 85 F.3d at 872.  Similarly, in *Colin ex rel. Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135 (C. D. Cal. 2000) (relying on *Hsu* and *Burns*), the court found irreparable injury where "[plaintiffs] had already missed an entire semester of [access]" and found that it was "a significant portion of the time that they will spend in high school." *Id.* at 1449.  The court further noted that "[b]ecause Zetin is a

10

junior, she has only a year and a half left before she graduates. By the time this matter is resolved in court, Zetin may have graduated." *Id.* The court concluded:

> Without official recognition for nearly *six months*, the students have not had the same privileges as other student groups and have been burdened by having to meet across the street from their school. Thus*, even without the presumption of irreparable harm in the area of free speech*, the urgency of this matter and the inadequacy of legal remedies mandates preliminary relief.

*Id.* at 1150 (emphasis added).

Citing *Hsu* and *Colin*, *Boyd* found irreparable harm where "Plaintiffs [had] been prevented from meeting for more than three months of [the semester]." *Boyd*, 258 F. Supp. at 692. As was also discussed in *Colin* the court noted "[b]ecause two Plaintiffs (Fannin and McClelland) are seniors and three Plaintiffs (Alcorn, Carter, and Duarte) are juniors, by the time this matter is resolved on the merits, these five Plaintiffs may have graduated and would therefore receive no benefit." *Id.*

Given that Plaintiffs have been denied equal access to the school in violation of the EAA based on their religious viewpoint since at least October 31, 2006, and given the three month and semester long time spans in *Colin* and *Boyd*, this Court holds that Plaintiffs will be irreparably harmed without the requested injunction. The reliance in *Colin* and *Boyd* on the possibility of the harm and/or litigation extending past the graduation of the students further supports this conclusion. Like the students in *Colin,* and like some of the students in *Boyd*, Plaintiff A.G. is a Junior who may graduate before this matter is concluded.

### C) Harm to Others or Public Interest

This Court agrees with Plaintiffs that the peaceful exercise of rights cannot be

11

considered harmful to others. *See Connection*, 154 F.3d at 288. Given the similarity of the right protected by the EAA to constitutional First Amendment rights, this court relies on *G& V Lounge, Inc. V. Michigan Liquor Control Comm'n*, 23F.3d1071, 1079 (6th Cir. 1994), to hold that enforcement of Plaintiffs' valid statutory rights is in the public interest.

**D) Weighing the Equities**

Weighing the equities and finding: (1) a likelihood of success on the merits; (2) that irreparable harm will befall Plaintiffs absent an injunction; (3) that an injunction will not harm others or the public interest; (4) the increased importance of the merits when expressive rights are at issue, this Court finds that a Temporary Restraining Order/Preliminary Injunction is justified. At the hearing, the parties agreed that since the only remaining issue is attorney fees, entry of a Permanent Injunction is appropriate.

**E) Bond Not Required**

This Court finds that bond is not required. In making this finding, the Court relies on the holding in *Boyd*; Plaintiffs are likely to succeed on the merits and compliance by Defendants will not cause monetary risk or harm to them. *See Boyd*, 258 F. Supp. at 693.

**IV. CONTENT AND SCOPE OF INJUNCTION**

For the reasons set forth above, Plaintiffs' Motions are **GRANTED.** The Court enters this as its Permanent Injunction, based on its Findings of Fact and Conclusions of Law.

Defendants must:

(1) Allow ALIVE to meet under the same terms and conditions as other noncurriculum-related student groups, including use of the S.M.A.R.T. period if it is still part of the school schedule;

(2) Allow ALIVE to advertise its meetings over the public address system;

(3) Allow ALIVE to advertise its meetings on the school's bulletin boards;

(4) Allow ALIVE to be listed as a school group on the school's website;

(5) Allow ALIVE to be listed in the school's yearbook;

(6) Allow ALIVE to use the school's photocopying machines;

(7) Allow ALIVE to have announcements broadcast over the school's internal television network;

(8) Generally provide ALIVE with the same access, treatment, benefits, and privileges other noncurriculum-related student groups and clubs enjoy;

(9) Refrain from singling out ALIVE for selective enforcement of school policies regarding noncurriculum-related student groups; and

(10) Refrain from unlawfully or maliciously taking adverse action against Plaintiff A.G., ALIVE, or club members for their participation in, or support for, ALIVE.

This Permanent Injunction is binding upon "the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise." FED. R. CIV. P. 65(d).

**IT IS ORDERED.**

s/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: September 5, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 5, 2007.

s/Linda Vertriest
Deputy Clerk