UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALIVE**, AN UNINCORPORATED ASSOCIATION; **A.G.**,
A MINOR, BY AND THROUGH HIS NEXT FRIENDS,
**DUANE GRIDER** AND **ELLEN GRIDER**,

        Plaintiffs,        Case No. 07-CV-12116

vs.        DISTRICT JUDGE VICTORIA A. ROBERTS
        MAGISTRATE JUDGE STEVEN D. PEPE

**FARMINGTON PUBLIC SCHOOLS**; **SUE
ZURVALEC**, IN HER PERSONAL CAPACITY AND IN
HER OFFICIAL CAPACITY AS SUPERINTENDENT OF
FARMINGTON PUBLIC SCHOOLS; **CATHERINE
COST**, IN HER PERSONAL CAPACITY AND IN HER
OFFICIAL CAPACITY AS ASSISTANT SUPERINTENDENT OF
FARMINGTON PUBLIC SCHOOLS; **DR. JOHN
BARRETT**, IN HIS PERSONAL CAPACITY AND IN HIS
OFFICIAL CAPACITY AS PRINCIPAL OF FARMINGTON
HIGH SCHOOL; **ROBERT CRAWFORD**, IN HIS
PERSONAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS
ASSISTANT PRINCIPAL OF FARMINGTON HIGH
SCHOOL,

        Defendants.
============================/

## REPORT AND RECOMMENDATION

        This action was filed in May 2007 pursuant to 42 U.S.C. § 1983 to enforce Plaintiffs' rights under the Federal Equal Access Act, the Michigan Equal Access Act, and the First and Fourteenth Amendments to the United States Constitution (Dkt. #1). On September 5, 2007, this Court entered a permanent injunction in favor of Plaintiffs, making them the prevailing parties (Dkt. #19). On October 10, 2007, Plaintiffs ALIVE and A.G., pursuant to 42 U.S.C. §§ 1983

and 1988 and E.D. Mich. L. R. 7.1 and 54.1.2, filed a motion seeking nominal damages, attorneys' fees, and costs (Dkt. #25). Plaintiffs' motion was referred for report and recommendation on February 14, 2008, pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. #30). For the reasons stated below, it is **RECOMMENDED** that Plaintiffs' motion be **GRANTED IN PART**.

**I.    BACKGROUND FACTS**

This matter arises out of the differential treatment of a Christian bible study group, ALIVE, in Farmington High School. ALIVE, an unincorporated student group, was formed by A.G. and another student at the same school (who has since graduated) in 2006. ALIVE's mission is to "encourage positive spiritual discussion among students in the school about Christianity, for students to learn more about the basic, major beliefs taught in the bible, and for students to pray for the needs of students, the school, the community, and the nation." (Dkt. #15, p. 14). Later in 2006, Plaintiff A.G. and his friend sought formal recognition as an official school student group. *See Id.*

On or about August 28, 2006, Plaintiff A.G. made a written request for recognition of ALIVE by the school as an official student group. *Id*. at 16. Defendant Principal responded to the request by directing Plaintiff A.G. to submit a mission statement and by-laws for the proposed club to Defendant Assistant Principal. The request was denied. The parties next met to discuss the denial. At this meeting, Defendant staff said the denial was because of ALIVE's "religious viewpoint and content of its speech and meetings." *Id.* at 18. Plaintiff then informed Defendant Principal of the Federal Equal Access Act. Defendants offered to allow the group to meet, but without formal recognition by the school. In addition, Defendants refused to grant ALIVE either equivalent status or the privileges enjoyed by most other student groups.

Plaintiffs say these refusals include:

> 1) Not being permitted to meet under the same terms and conditions as other student groups, including not being permitted to meet during the S.M.A.R.T. period (an activity time during the school day);
>
> 2) Not being allowed to advertise the group over the public address system;
>
> 3) Not being able to advertise on the school's bulletin boards;
>
> 4) Not being listed as a school group on the school's website;
>
> 5) Not being listed in the school's yearbook;
>
> 6) Not being able to use the school's photocopying machines; and
>
> 7) Not being permitted to have ALIVE announcements broadcast over the school's internal television network.

(Dkt. #15, p. 6).

After informing Plaintiff A.G. of these details, Defendant Assistant Principal suggested that Plaintiff A.G. and his friend advertise their group's meeting by wearing t-shirts in school with the time and place of the meetings. The Defendant Assistant Principal suggested doing the same with backpacks. *See Id.* at 6.

The parties had additional meetings in which they discussed the merits of their case but were not able to resolve their differences. Plaintiffs' counsel sent Defendants Principal, Superintendent, and Board a letter requesting equal treatment under the Equal Access Act. Defendants failed to respond and Plaintiffs filed suit. The suit requested a Temporary Restraining Order requiring Defendants to provide the "same access, treatment, benefits, and privileges other noncurriculum-related student groups and clubs enjoy . . . ." The suit also requested all those things Plaintiffs allege Defendants refused them.

Although it is not clear from the information submitted to this Court that all student

groups have always been given equal access to all of the privileges Plaintiffs seek, it is clear that Defendants granted at least one student organization at least one of these privileges during the time that ALIVE has been in existence, and that ALIVE has not been granted any of the privileges it seeks (Dkt. #15, p. 17; Dkt. #7, p. 57).

In her order granting Plaintiffs a permanent injunction, Judge Roberts found that "it appears clear that ALIVE has been treated differently than other student groups 'on the basis of' the religious content of their speech." (Dkt. #19, p. 7), and that Plaintiffs are "likely to succeed on the merits of each of the matters they seek to do at the high school, and their general request that they be provided the 'same access, treatment, benefits, and privileges other non-curriculum related student groups and clubs enjoy.' Pl. Mo. TRO at 6." *Id*. at 9. Similarly, she found that Plaintiffs were likely to succeed on the merits of their state law claim given the textual similarity of the Michigan Equal Access Act ("MEAA") to the Federal Equal Access Act ("EAA"). Judge Roberts concluded that these findings "weighed heavily in favor of issuance of the temporary restraining order." *Id.*

After weighing the equities and finding: (1) a likelihood of success on the merits; (2) that irreparable harm will befall Plaintiffs absent an injunction; (3) that an injunction will not harm others or the public interest; (4) the increased importance of the merits when expressive rights are at issue, Judge Roberts found that a Temporary Restraining Order/Preliminary Injunction was justified. At the hearing before Judge Roberts on this matter, the parties agreed that since the only remaining issue was attorney fees, entry of a Permanent Injunction was appropriate. Accordingly, Judge Roberts ordered that Defendants must:

> (1) Allow ALIVE to meet under the same terms and conditions as other noncurriculum-related student groups, including use of the S.M.A.R.T. period if it

is still part of the school schedule;

(2) Allow ALIVE to advertise its meetings over the public address system;

(3) Allow ALIVE to advertise its meetings on the school's bulletin boards;

(4) Allow ALIVE to be listed as a school group on the school's website;

(5) Allow ALIVE to be listed in the school's yearbook;

(6) Allow ALIVE to use the school's photocopying machines;

(7) Allow ALIVE to have announcements broadcast over the school's internal television network;

(8) Generally provide ALIVE with the same access, treatment, benefits, and privileges other noncurriculum-related student groups and clubs enjoy;

(9) Refrain from singling out ALIVE for selective enforcement of school policies regarding noncurriculum-related student groups; and

(10) Refrain from unlawfully or maliciously taking adverse action against Plaintiff A.G., ALIVE, or club members for their participation in, or support for, ALIVE.

*Id.* at 13.

Following Judge Roberts ultimate determination, counsel for the parties conferred regarding the present motion for costs prior to the October 3, 2007, telephonic conference held with this Court. Based on that conference, Defendants do not dispute Plaintiffs' entitlement to nominal damages or entitlement to attorneys' fees and costs; Defendants, however, dispute the amount of fees to which Plaintiffs are entitled, thus requiring a ruling by this Court.

Here, Plaintiffs sought declaratory and injunctive relief and nominal damages not to exceed a total of $19.00 (Dkt. #1). As noted above, Judge Roberts granted Plaintiffs a permanent injunction on September 5, 2007 (Dkt. #19). The permanent injunction is an enforceable judgment on the merits. *Déjà Vu v. Nashville*, 421 F.3d 417, 420 (6th Cir. 2005).

With the entry of the permanent injunction in their favor, Plaintiffs are prevailing parties for purposes of obtaining nominal damages and their attorneys' fees and costs.[1]

During this litigation, Plaintiffs have been represented by the same attorney, Edward L. White III, who has worked for two different nonprofit organizations (the Thomas More Law Center until September 14, 2007, and the American Center for Law & Justice as of September 15, 2007). Plaintiffs request that the award of fees and costs be divided between these two organizations based on the time frames of representation in this action. To date, after the exercise of billing judgment, Plaintiffs' counsel indicates he has expended 116.40 billable hours in this action at an hourly rate of $220.00 for a total fee amount of $25,608.00. Plaintiffs' counsel has expended a total of $882.90 in costs in this action. Accordingly, Plaintiffs seek a total award of $26,490.90, divided as follows: $23,034.00 in fees (104.70 hours at $220.00 per hour) and $840.00 in costs payable to the Thomas More Law Center and $2,574.00 in fees (11.70 hours at $220.00 per hour) and $42.90 in costs payable to the American Center for Law & Justice.

Plaintiffs' motion is supported by Exhibits A, A-1, A-2, B, and C attached to their motion for costs. Exhibit A is the declaration of Plaintiffs' counsel regarding his background and the fees and costs incurred. Exhibit A includes supporting Exhibit A-1 (time sheets and bills) and

---

[1] The Supreme Court has stated that "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted); *accord Déjà Vu*, 421 F.3d at 420-22. The Supreme Court has explained that a prevailing party is one who receives "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

Exhibit A-2 (correspondence between counsel for the parties). Exhibit B is the declaration of attorney Timothy McDaniel regarding the appropriateness of the $220.00 hourly rate charged by Plaintiffs' counsel. Exhibit C is a copy of the transcript of the August 31, 2007, hearing on the injunction motions.

In sum, Plaintiffs request that this Court (1) award Plaintiff ALIVE $9.00 in nominal damages and Plaintiff A.G. $9.00 in nominal damages, (2) award attorneys' fees and costs in the amounts of $23,874.00 payable to the Thomas More Law Center ($23,034.00 in attorneys' fees and $840.00 in costs) and $2,616.90 payable to the American Center for Law & Justice ($2,574.00 in attorneys' fees and $42.90 in costs), and (3) require Defendants to pay these amounts within thirty days from the date that this Court's order on this motion is entered on the court docket. Moreover, on October 27, 2007, Plaintiffs filed a "supplement" to their motion for nominal damages, attorneys' fees and costs (Dkt. #28). In that motion, Plaintiffs assert their counsel is entitled to additional compensation for litigating the claim for attorneys' fees, and requests that their counsel be compensated for this additional time, which amounts to $1,430.00 (6.50 hours by $220.00). Plaintiffs ask that this additional amount be made payable to the American Center for Law & Justice, thereby bringing their overall request for this organization to $4,046.90.

## II. ANALYSIS

### A. Legal Standards

When determining reasonable fees, the Court multiplies a reasonable number of hours billed by a reasonable billing rate. *Reed v Rhodes*, 179 F.3d 453, 471472 (6th Cir. 1999). Reasonable attorney fees are based on the market rates for services rendered. *Hadix v Johnson*,

65 F.3d 532, 536 (6th Cir. 1995). A reasonable rate will attract qualified and competent counsel without producing a windfall to the attorneys. *Northcross v Board of Education of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979). The factors to be considered in determining a reasonable rate and reasonable hours are as follows:

    1. The time and labor required by given case;

    2. The novelty and difficulty of the questions presented;

    3. The skill needed to perform the legal service properly;

    4. The preclusion of employment by the attorney due to acceptance of the case;

    5. The customary fee;

    6. Whether the fee is fixed or contingent;

    7. Time limitations imposed by the client or the circumstances;

    8. The amount involved and the results obtained;

    9. The experience, reputation and ability of the attorneys;

    10. The "undesirability" of the case;

    11. The nature and length of the professional relationship with the client; and,

    12. Awards in similar cases.

*Reed v. Rhodes*, 179 F.3d at 471 n.3.

    In *Hensley*, 461 U.S. at 433, the Supreme Court held:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The Supreme Court has recognized that there is a strong presumption that this "lodestar" figure represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). In fact, the Supreme Court held in *Delaware Valley I*: "In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance."

In *United Slate, Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495, 502 n.2 (6th Cir. 1984), the Sixth Circuit held that the documentation submitted in support of an attorney fee petition must be of sufficient detail to enable the reviewing court to determine with a high degree of certainty that the hours claimed were actually and reasonably expended in the prosecution of the litigation. Thus, it is the duty and obligation of the Plaintiffs to produce documentation and evidence supporting the hours worked and the rates claimed. It is not the responsibility of the Court to seek out the information if the Plaintiffs have not made it available. Moreover, it is not the obligation of the Defendants to refute assertions for which the Plaintiffs have offered insufficient supporting evidence.

Moreover, in *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 305 (S.D. N.Y. 1999), the court ruled that "lumped" billing entries were not an appropriate method of keeping time when a party sought to recover attorney fees:

> [Lumping] several services or tasks into one time sheet entry [makes it] difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided. . . . It is not the court's job to decipher time entries and guess how much time each activity took. . . . It is the responsibility of the applicant to make separate time entries for each activity.

**B.     Factual Analysis**

1. **Total Time for Research and Preparation of the Complaint**

Defendants dispute the following charges regarding time spent researching and preparing the Complaint in this action that appear as entries in Plaintiffs' attorneys' fees petition:

| DATE | ATTY INITIALS | DESCRIPTION | HOURS | CHARGE |
|---|---|---|---|---|
| 3-27-07 | ELW | Legal research conducted re: equal access act | .8 | $176.00 |
| 3-28-07 | ELW | Reading equal access act cases and drafting demand letter to school officials | .8 | $176.00 |
| 3-30-07 | ELW | Legal research conducted re: equal access act and reading case law | 1.1 | $242.00 |
| 5-8-07 | ELW | Legal research conducted for claims to raise in complaint | .4 | No Charge |
| 5-9-07 | ELW | Legal research re: claims ; reading case law, reviewing documents , policies, outlining complaint | 8.0 | $1,760.00 |
| 5-10-07 | ELW | Reading case law re: claims to raise ; review of documents ; tel. conf. w/ clients; drafting of complaint; office conference w/ Pat Gillen re: issues in case[2] | 9.6 | $2,112.00 |
| 5-11-07 | ELW | Drafting of the complaint; legal research on claims and issues; review of local rules; tel. conf. w/ clients re: documents and facts | 9.0 | $1,980.00 |
| 5-13-07 | RJM | Review Complaint | .75 | No Charge |

---

[2] On May 10, 2007, there are also 1.50 hours worked recorded for Patrick T. Gillen, however, there was no charge for this time.

| 5-14-07 | ELW | Tel. confs. w/ clients re: documents and revisions to complaint; review of documents; additional research of possible claims; revised complaint | 6.7 | $1,474.00 |
|---|---|---|---|---|
| 5-14-07 | RJM | Review Complaint | .5 | No Charge |
| 5-15-07 | ELW | Legal research re: injunction; preparing case initiation paperwork, subpoenas, tel. confs. w/ clients re: changes to complaint; office conf. w/ Pat Gillen | 6.9 | $1,518.00 |
| 5-15-07 | PTG | Review of complaint and cfr. ELW re: issues pre-filing | 1.5 | No Charge |
| 5-16-07 | ELW | Finalized ed complaint and initiation paperwork for filing; filed complaint; tel. confs. w/ clients re: filing; review of Judge Roberts practice requirements; prepared and forwarded letter with complaint and summonses to process server | 7.6 Reduced to 3.0 | $660.00 |
| | | **TOTAL TIME FOR RESEARCH & PREP OF COMPLAINT** | **48.6** | |

48.6 HOURS x $220 = $10,692.00

Defendants argue that the amount of time spent researching and preparing the Complaint in this matter was excessive. They point to the fact that Plaintiffs' attorney specializes in civil rights, and that according to Plaintiffs' counsel's own biographic sketch attached to Plaintiffs' Summary as Exhibit A, he has specifically "specialized in civil rights litigation, particularly Federal Court litigation involving constitutional rights, as in this case." (Dkt. #25, Ex. A, White Decl. ¶ 4). Moreover, the Thomas More Law Center, professes to have, as one of its primary points in its mission statement, a commitment "to restoring and preserving . . . equal access in public schools (Christian/Bible Clubs)." In other words, great expertise exists among Plaintiffs'

counsel, and his colleagues, such that the amount of time allegedly spent on this Complaint is not "recoverable" as contemplated under 42 U.S.C. §1988 and, accordingly, Defendants argue Plaintiffs' attorney fees must be reduced.

As additional proof of the expertise of The Thomas More Law Center, Defendants have attached as Exhibit A to their Response, a Complaint previously filed by the same entity. That claim was against Northville Public Schools and some of their administrators. The complaint in that matter, like the present Complaint, indicates that students were deprived of equal access in violation of the Federal statute and the State statute (*See* Dkt. #27, Ex. B, pp. 15-16). Similar claims are made in Plaintiffs' Complaint in the present action (*See*, Dkt. #1, Plaintiffs' Complaint, pp. 17 & 21). While the current Complaint is not a copy of the *Northville* complaint, both complaints are similar in the following ways:

- Both allege improper acts or omissions by the superintendent;

- Both allege improper acts by a school administrator;

- Both complaints allege that the student group in question (Plaintiff) was not afforded the same rights as other non-curriculum groups;

- Both allege a violation of the First Amendment right to free speech (Dkt. #27, Ex. A, p. 10 & Plaintiffs' Complaint, p. 18).

- Both allege a violation of the Fourteenth Amendment (Dkt. #27, Ex. A, p. 12 & Plaintiffs' Complaint, p. 20).

Plaintiffs' counsel indicates that different attorneys worked on the *Northville* case (Dkt. #29, pp. 3-4), although his billings indicate consultation time with Patrick T. Gillen, who worked on the *Northville* case (*See,* Dkt. #25, Ex. A-1, May 10, 2007 & May 15, 2007, time entries). Yet, it is likely the Thomas More Law Center and the American Center for Law & Justice have access to the "legal libraries," pleading banks and other shared resources. It is also likely that

Plaintiffs' present counsel has drafted a number of complaints similar to the one in this matter because he specializes in this type of litigation, and that expertise is reflected in his hourly rate of $220.00 per hour.[3] Plaintiffs also concede that "the issues at hand were not legally complex. . ." (Dkt. #25, p. 13). Accordingly, this Court must determine whether the amount of hours billed are reasonable given the circumstances of the case and the level of expertise of the parties.

Defendants' chart (noted above), however, is a redacted representation of Plaintiffs' itemized fees statement. For one thing, the chart (when compared to the actual statement) include time entries and hours that have been excluded from the statement as a result of billing judgment, so the charts offer an inflated number of hours.[4] In addition, the descriptions in the charts of the tasks performed are Defendants' descriptions of the work performed and do not provide a complete description of the work done or the circumstances under which the work was done. The entire descriptions of the work performed are found in Plaintiffs' itemized fee statement, and are supported by Plaintiffs' counsel's declaration (Dkt. #25, Exs. A, A-1).

Yet, Plaintiffs bear the burden of documenting the correct hours expended with sufficient

---

[3] Plaintiffs' counsel has practiced exclusively in the area of civil rights litigation for approximately the past seven years and has been a practicing attorney for approximately the past fourteen years. Beyond his current practice, he has served as an Assistant United States Attorney
and as a law clerk to judges on the United States Court of Appeals for the Seventh Circuit, the United States District Court for the Middle District of Florida, and the Florida District Court of Appeal for the Fourth District. His current constitutional law practice is nationwide (Dkt. #25, Ex. A, White Decl. ¶¶ 1-5).

[4] As the Supreme Court has instructed, fee applicants must exercise "billing judgment" and exclude items from fee applications that are excessive, redundant, or unnecessary. *Hensley*, 461 U.S. at 434. As indicated in the attached declaration and time sheets, billing judgment has been exercised here. The original total of 136.95 hours has been reduced by 20.55 hours (or by 15%) to bring the total number of billable hours to 116.40 (Dkt. #25, Ex. A, White Decl. ¶ 7, Ex. A-1, pp. 1-8).

particularity that a district court can make a fair determination regarding attorney fees. In *Central Benefits Mutual Insurance Company, et al. v. Blue Cross and Blue Shield Association*, 983 F.2d 1065 (Table), Case No. 91-4159 (6th Cir. December 29, 1992) (unpublished), the Sixth Circuit held that the district court properly reduced an attorney fee petition both for vague and non-descriptive entries and for the practice of "lumping" multiple activities in a single time entry.

Moreover, in *Hensley*, the Supreme Court stated:

Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked [citation omitted] and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. n12

n12 We recognize that there is no certain method of determining when claims are 'related' or 'unrelated.' Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.

Reviewing the actual statement, it appears that Plaintiffs' counsel did not charge for work completed on the Complaint on May 8, 2007 (.40 hours), for one entry on May 13, 2007 (.75 hours) and for an entry on May 15, 2007 (1.50 hours) for work completed by Patrick T. Gillen. In addition, Plaintiffs' counsel reduced the number of hours working on this case on May 16, 2007, from 7.60 hours to 3.00 hours. Accordingly, Plaintiffs' counsel expended a total of 41.35 hours working, at least in part, on the present Complaint (48.6 hours - 7.25 hours).

Here, Plaintiffs have failed to justify the need to expend over 40 hours devoted to research and drafting of this Complaint (among other items), especially when Plaintiffs are represented by counsel and organizations that specialize in these types of matter. Given the

14

similarity between the present Complaint and the complaint filed against Northville Public Schools and some of their administrators, it is unreasonable to charge Defendants for the full 40 hours billed. While Patrick Gillen, who was the attorney on the *Northville* case, did not charge for his consultation, his input, research and the *Northville* complaint should have reduced the time to draft the current Complaint more than it appears to have done. Under the circumstances, a reasonable amount of time for researching, drafting and filing the Complaint should be 25 hours. It is therefore appropriate to charge Defendants 25 HOURS x $220 =$5,500.00 for the hours required to research and draft the present Complaint.

**2.     Time Spent of the Consent Judgment**

Defendants dispute the following charges regarding time spent drafting and revising the Consent Judgment issued in this case:

| DATE | ATTY INITIALS | DESCRIPTION | HOURS | CHARGE |
|---|---|---|---|---|
| 6-9-07 | ELW | Drafted letters to Mike Weaver and Lisa Swem re: case; drafting of proposed consent judgment | 1.7 | $374.00 |
| 6-11-07 | ELW | Revised proposed consent judgment; tel. conf. w/ client on same | 1.2 | $264.00 |
| 6-12-07 | PTG | Review of consent judgment and cfr ELW on same | .7 | No Charge |
| 6-13-07 | ELW | Revised proposed consent judgment and prepared letter w/ consent judgment to Mike Weaver | 1.0 | No Charge |
|  |  | **Total Time for Consent Judgment** | 4.6 |  |

4.6 HOURS X $220 = $1,012.00

Again, Defendants argue there are close similarities between the work completed in this

15

matter and in the *Northville* case. They assert that the consent judgment drafted and entered by the Thomas More Law Center in the *Pearce v Northville* case is nearly identical to the Consent Judgment drafted by The Thomas More Law Center in the present case (Dkt. #27, Ex. C).[5] Yet, reviewing the actual statement, it appears that Plaintiffs' counsel did not charge for work completed on the Consent Judgement on June 12, 2007 (0.70 hours) that was completed by Patrick Gillen, and for work on June 13, 2007 (1.00 hours) that was completed by Edward White. Therefore, Plaintiffs are charging Defendants for a total of 2.9 hours working, at least in part, on the Consent Judgment (4.6 hours - 1.7 hours). Unlike the Complaint, on the Consent Judgment, there are far greater similarities to the work done in *Northville*. Accordingly, it is appropriate to reduce the hours billed to 2 hours and to charge Defendants 2 HOURS x $220 =$440 for the hours required to draft and revise the present Consent Judgment.

### 3. Other Costs

Defendants also generally dispute the hours charged by Plaintiffs' counsel and ask the Court to reduce the award. By way of example, defense counsel, Michael Weaver, indicates in his response to Plaintiff's motion for costs that he has billed a total of $5,589.90 for this matter, and therefore asks that this Court award Plaintiffs a fee not to exceed $8,000.00 (Dkt. #27, p. 11).[6] On June 3, 2008, Plaintiffs filed a supplemental brief in which they indicate that another

---

[5] Defendants, however, fail to attach a copy of Plaintiffs' proposed Consent Judgment in this case to their Response. Moreover, a formal Consent Judgment does not appear on the docket in the present case to which this Court could compare the *Northville* consent judgment.

[6] Plaintiffs indicate that in the *Northville* case, subsequent to the entry of a consent judgment, Defendants paid the Thomas More Law Center $40,000 in attorneys' fees and costs (Dkt. #25, Ex. A, White Decl. ¶ 11, Ex. A-1 at 017). From a review of the docket in that case, it does not appear that a motion for attorneys fees and costs was filed, but rather the parties settled that matter without the Court's assistance.

defense attorney working on this case, Lisa Swem, also charged Defendants $4,326.00 in fees, which when added to defense attorney's Michael Weaver's alleged $5,589.90 in fees results in a total fee amount of $9, 915.90, almost double that previously claimed by Defendants in their response (Dkt. #31).  Regardless, Defendants, do not provide this Court with any argument or evidence justifying further reduction of Plaintiffs' counsel fee, nor does this Court find any reason to support making any further deductions in addition to those already made regarding the time spent drafting and revising Plaintiffs' Complaint and Consent Judgment.

   **4.   Conclusion**

Accordingly, **IT IS RECOMMENDED** that Defendants hours be calculated in the following manner, and that the appropriate amount of fees and costs be awarded.  Based on the determinations made above, the Court has reduced Plaintiffs' primary statement by 17.25 hours. Plaintiffs submitted a bill charging for 116.40 hours.  Subtracting 17.25 hours from 116.40 hours results in 99.15 hours, which multiplied by Plaintiffs' counsel's hourly rate of $220 results in a total of $21, 813.00.  Defendants have not disputed Plaintiffs' bill for costs of $882.90 (filling fee, process server fee, court reporter fee and hearing transcript), which added to the attorney fees results in total of $22,695.90.

Plaintiffs' counsel also submits a bill for his time spent on the present motion for costs. His initial bill was for 10.4 hours x $220 or $2,288.00.[7]  On October 27, 2007, Plaintiffs filed a

---

[7] While there appear to be a number of entries in Plaintiffs' bill that aver to matters related to a motion for costs (e.g., on September 26, 2007, Plaintiffs' counsel had a telephone conference with Attorney Timothy McDaniel and prepared his declaration regarding a suitable hourly rate), Defendants only specifically dispute the entries on September 29, October 2, and October 9 (Dkt. #27, p. 11).  Accordingly, the Court has adopted the figure provided by the Defendants of 10.4 hours.

"supplement" to their motion for nominal damages, attorney's fees and costs requesting an additional $1,430.00 (6.50 hours x $220.00) for time spent litigating this action (Dkt. #28). Plaintiffs request that this additional amount be made payable to the American Center for Law & Justice, thereby bringing their overall request for this organization to $4,046.90. While Plaintiffs are entitled to fees in conjunction with a motion for costs, *Weisenberger v. Huecker,* 593 F.2d 49, 54 (6th Cir. 1979) (explaining that fees should be awarded for time spent pursuing attorneys' fees in the district court and in the appellate court), 16.9 hours is an excessive amount of time spent in preparation for the motion and a reply brief. Accordingly, it is appropriate to reduce the hours billed to 10 hours and to charge Defendants 10 hours x $220 = $2,200.00 for costs incurred by Plaintiffs' in bringing the present motion.

### III. RECOMMENDATION

In conclusion, **IT IS RECOMMENDED** that Plaintiffs' motion be **GRANTED IN PART** and that this Court:

(1) award Plaintiff ALIVE $9.00 in nominal damages and award Plaintiff A.G. $9.00 in nominal damages;

(2) award attorneys' fees and costs to Plaintiffs as the prevailing party in the amounts of $24,895.90 ($2,200 + $22,695.90); and

(3) require Defendants to pay these amounts within sixty days from the date that this Court's order on this motion is entered on the court docket.

Because the fee agreement between Plaintiffs and Plaintiffs' counsel and the contractual relation between Plaintiffs' counsel and Thomas More Law Center and the American Center for Law & Justice are not part of this litigation, and because 42 U.S.C. § 1988(b) permits an award of fees and costs to "the prevailing party," **IT IS FURTHER RECOMMENDED** that the allocation of fees be determined by Plaintiffs' counsel and not this Court though a framework for counsel's

review and modification, if appropriate, as set out below.[8]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

---

[8] Plaintiffs' counsel indicates he worked for the Thomas More Law Center until September 14, 2007, and the American Center for Law & Justice as of September 15, 2007. The deduction of hours for work completed on the Consent Judgment and the Complaint all occur before September 15, 2007, and therefore only effect the amount payable to the Thomas More Law Center. Subtracting 17.25 hours from 104.70 hours (the amount Plaintiffs' counsel asserts he spent working for the Thomas More Law Center) results in 87.45 hours, which multiplied by Plaintiffs' counsel's hourly rate of $220 results in a total of $19, 239.00. Accordingly, it seems the Thomas More Law Center should receive a total award of $20,079.00 ($19,239.00 in fees plus $840.00 in costs).

Plaintiffs' counsel indicates he worked for the American Center for Law & Justice for a total of 28.6 hours (16.9 hours on the motion for attorney fees + 11.70 hours worked on the case). The Court has reduced the hours for the motion for attorney fees to 10 hours, thereby resulting in a total of 21.7 hours worked on this case and the present motion, which multiplied by Plaintiffs' counsel's hourly rate of $220 results in a total of $4,774.00. Accordingly, it seems the American Center for Law & Justice should receive a total award of $4,816.90 ($4,774.00 in fees and $42.90 in costs).

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

| | |
|---|---|
| Date: July 2, 2008<br>Ann Arbor, Michigan | s/Steven D. Pepe<br>United States Magistrate Judge |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 2, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298